[Civ. No. 3902.   Second Appellate District, Division One.—June 19, 1922.]

## F. B. COX, Appellant, v. H. ROSENBERG et al., Respondents.

[1] CONTRACTS—BREACH—ACTION FOR DAMAGES—CONTRACTING PARTIES —FINDING — EVIDENCE. — In this action to recover damages arising from the failure to deliver a quantity of salt in part payment of an excavator alleged to have been sold and delivered by plaintiff to the defendants, the evidence was sufficient to justify the finding of the trial court that the contract entered into by plaintiff was in fact a contract with one of the defendants other than the defendant who signed it, and not with a partnership composed of said defendant and all or any of the other defendants.

[2] ID.—ASSIGNMENT—UNSUPPORTED FINDING—JUDGMENT.—In such action, there having been no evidence to support the finding that a certain indebtedness of plaintiff to a third party had been assigned to the defendant against whom judgment was rendered in favor of plaintiff, said defendant was not entitled to credit therefor.

[3] ID.—PERMISSION TO FILE SEPARATE AMENDED ANSWERS—DISCRETION NOT ABUSED.—The trial court did not commit an abuse of discretion in granting the defendants permission at the time of the trial to file separate amended answers, wherein they denied certain facts which had been admitted in their original joint answer, plaintiff having declined a proffered continuance at the cost of the defendants, and it not being claimed that by reason of the amendments the plaintiff suffered any disadvantage in the presentation of the evidence, or that the evidence is any different from what it would have been if the issues suggested thereby had been raised by the original answer.

[4] ID. —  AMENDMENT OF ANSWER AT TIME OF TRIAL — DISCRETION. — The rule that a party will not be permitted on the trial to amend by denying a fact admitted in the answer is not an absolute rule which must be applied without use of discretion.

[5] ID.—NEWLY DISCOVERED EVIDENCE—LACK OF DILIGENCE—DENIAL OF NEW TRIAL.—The trial court is justified in denying a motion for a new trial on the ground of newly discovered evidence, where the affidavits presented to the court on the hearing of that motion relate to conditions existing subsequent to the execution of the contract out of which plaintiff's cause of action arose, and refer to facts which were known, or by the use of reasonable diligence might have been known, by the plaintiff at the time of the trial of the action.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Tipton & Cailor for Appellant.

Joe Crail and Julius V. Patrosso for Respondents.

CONREY, P. J.—Appeal from the judgment in an action to recover damages arising from breach of contract.

The contract was in writing, dated February 3, 1919. By its terms it purported to be a contract between F. B. Cox and H. Rosenberg. It was stated therein "that for and in consideration of the sum of $1,850 and 1150 tons of salt f. o. b. cars Saltus, California, to be delivered to the said F. B. Cox f. o. b. Saltus in quantities not less than two hundred tons per month beginning in the month of March, 1919, the whole 1150 tons to be delivered in six months; the said F. B. Cox does hereby sell one F. C. Austin, type D. Dragline Excavator complete as per description hereto attached, . . . said machine to be delivered to the said H. Rosenberg f. o. b. cars at Saltus, California." Claiming that the individual defendants were co-partners in the salt business at Saltus, the plaintiff brought this action against them and against the alleged partnership, and alleged that his contract of February 3, 1919, was made with them. In the complaint it is alleged that pursuant to said contract the plaintiff delivered the excavator to the defendants, who accepted and used the same in their business. Nevertheless the defendants have neglected and refused to deliver to the plaintiff any of said 1,150 tons of salt.

Upon this complaint, and the answers of the defendants Rosenberg, Kleinberger, Greenberg, Schwartz, and Hollar, and upon a cross-complaint of Rosenberg, Greenberg, and Kleinberger, the action was tried. There was no service of summons on defendants C. Z. Salling and John Doe, or appearance by them. The court, by its findings of fact, determined that the defendants never were copartners and that the Hollar Rock Salt Company and Pacific Rock Salt Company consisted only of the defendant Hollar, who was doing busi-

ness under those fictitious names; that the Rosenberg contract was a contract between the plaintiff and the defendant Hollar; that in executing the written contract, Rosenberg was acting solely as agent for Hollar; that the plaintiff at that time knew that Rosenberg was acting for and on behalf of defendant Hollar, and not for or on behalf of himself or any of the defendants other than the defendant Hollar.

On account of the nondelivery to plaintiff of said 1,150 tons of salt, the court decided that plaintiff was entitled to judgment against the defendant Hollar for damages for breach of the contract; and that the value of the salt which was to have been delivered was $10 per ton. The court further found "that on said third day of February, 1919, and at the time of the execution of said contract by plaintiff and defendant, X. H. Hollar, the defendant, A. L. Greenberg, loaned to plaintiff the sum of twenty-seven hundred and fifty dollars ($2750), and that plaintiff agreed to repay said sum to the said defendant from the proceeds to be derived from the sale of the salt agreed to be delivered to plaintiff by the defendant, X. H. Hollar, and the court finds that said sum of $2750 has never been repaid to said defendant, A. L. Greenberg, by plaintiff, and that prior to the commencement of this action, said defendant, A. L. Greenberg, transferred said claim to the defendant, X. H. Hollar." Thereupon the court rendered judgment against the defendant Hollar in the sum of $8,750.

The plaintiff being dissatisfied with the amount of the judgment, and also because he failed to obtain any judgment against the defendants other than Hollar, appeals from the judgment.

The relations existing between the defendants resulted from certain transactions between them prior to the sale of the excavator by the plaintiff. By an instrument dated September 27, 1918, the Consumers Salt Company had made a lease of its property at Saltus to the defendant Hollar. Hollar arranged with Greenberg and Kleinberger to advance to him the sum of $20,000 to enable him to engage in the production and sale of salt from his leased property. On the twenty-seventh day of January, 1919, Hollar executed an "assignment and sale of lease" whereby he assigned to Greenberg and Kleinberger all of his right,

title, and interest in and to the lease. Thereupon, and on the same day, Greenberg and Kleinberger, as parties of the first part, executed to Hollar and Schwartz, parties of the second part, a so-called "purchase lease" whereby the parties of the first part leased to the parties of the second part for a term of two years all of the property this date purchased by the parties of the first part from Hollar. The parties of the second part agreed to pay the sum of $20,000, together with a royalty on salt produced from the leased property. From further terms of this contract, it appears to have been contemplated that a corporation would be formed for the conduct of the proposed business and that all of the parties to this contract would become stockholders thereof. Apart from that arrangement, Kleinberger and Greenberg agreed that upon payment of said sum of $20,000 and the additional royalty referred to, they would transfer to Hollar and Schwartz the property described, being the property which the parties of the first part had that day purchased from Hollar.

The sum of $20,000 was advanced by Kleinberger and Greenberg from time to time beginning on the twenty-eighth day of January, 1919, so that on April 4, 1919, that entire sum had been paid out by them on requisitions made by Hollar.

Late in January, 1919, and at about the time when Hollar had completed the financial arrangements mentioned above, he also entered into negotiations with the plaintiff Cox for the purchase of the excavator owned by Cox. The proposition as finally accepted by Cox, was made by Schwartz and Hollar; although the plaintiff says that Greenberg and Kleinberger also were present. As has been seen, Cox received a cash payment of $1,850 as part of the consideration for his sale of the excavator, but because he needed a larger sum to enable him to deliver the excavator, a loan of $2,750 was made by Greenberg to Cox. This transaction was arranged by Schwartz, who, on behalf of Cox, made application to Greenberg for the loan. An agreement in writing was made, dated February 3, 1919, between Cox and Greenberg, providing for repayment of the $2,750; such repayment to be made through the Los Angeles Trust & Savings Bank, out of the moneys to be collected for account of Cox on sales of the salt which

Cox was to receive as part of the consideration for the sale of his excavator. It was agreed that "the Hollar Rock Salt Company shall forward the bills of lading for salt shipped at the request or order of F. B. Cox or assignees," to the bank. On the same day, February 3, 1919, escrow instructions were deposited with the Los Angeles Trust and Savings Bank, providing for the delivery of the bill of sale by Cox, and for carrying into effect the terms of the loan agreement between Cox and Greenberg. These instructions were signed by F. B. Cox, "Hollar Rock Salt Company by X. Hollar," H. Rosenberg, and A. L. Greenberg. Rosenberg was not present during any of the negotiations until he appeared and signed the excavator purchase agreement and the escrow instructions. The plaintiff testified that it was represented to him that the excavator was put in Rosenberg's name in order to secure Greenberg and Kleinberger, and also in order to transfer it to the corporation which they intended to organize.

There seems to be no doubt that Rosenberg was only a nominal purchaser, and that this was understood by all parties concerned. The only question is whether, as such nominal purchaser, he represented Hollar alone or represented a group of persons consisting of Hollar and one or more of the other defendants.

Appellant contends that the evidence is insufficient to sustain the findings that the Hollar Rock Salt Company and Pacific Rock Salt Company were composed only of the defendant Hollar; or that in executing the Rosenberg contract, Rosenberg was acting solely as agent for Hollar, or that this was known to the plaintiff; or that prior to the commencement of this action Greenberg transferred to the defendant Hollar his claim for said sum of $2,750. Appellant directs our attention to the evidence that Hollar and Salling issued a certificate that they were doing business under the fictitious firm name of Pacific Rock Salt Company; that the Pacific Rock Salt Company had a bank account, and that Schwartz testified that he and Hollar were authorized to draw checks thereon, the checks being signed by Hollar and countersigned by Schwartz; that Schwartz said that he was "secretary" for the Pacific Rock Salt Company; that Rosenberg signed the contract of purchase of the excavator in his own name and testi-

fied that the contract had been put in his name "to protect, I believe, the $2,750 that Mr. Greenberg had coming"; that there is no evidence of any instrument or act of transfer by Greenberg to Hollar, of Greenberg's right to repayment of the said $2,750 loan. The record shows, however, that the certificate of fictitious firm name made by Hollar and Salling bears date more than eight months later than the Rosenberg contract. Schwartz came into these transactions as the agency whereby Kleinberger and Greenberg were induced to advance money to Hollar as a secured loan, but contemplating that a corporation would be formed in which they all would become stockholders. Schwartz testified that the organization of the company was never consummated "because of differences and demands of parties who put up the money," and that his own interest in the corporation was to have been a promotion interest. The evidence indicates most strongly that Schwartz and Rosenberg never obtained any substantial interest in the business, and never invested anything therein; and that Kleinberger and Greenberg never changed their status from that of creditors of Hollar. [1] We think that the evidence was sufficient to justify the court in finding that the Rosenberg contract was in fact a contract with Hollar, and not with a partnership composed of Hollar and all or any of the other defendants.

[2] According to the value of the salt as found by the court, the judgment against Hollar should have been for the sum of $11,500, unless the $2,750 demand of Greenberg against the plaintiff had been by him assigned to Hollar. As we have seen, the court found that this $2,750 was loaned by Greenberg to the plaintiff. Therefore it was not a payment by Hollar, nor a loan by him. There is no evidence of any assignment by Greenberg of his demand against the plaintiff. Hollar is not entitled to credit therefor. The finding that such assignment was made is not sustained by the evidence.

It should be noted also that the reduction above noted in the amount of the judgment is not justified in the pleadings; that, in his amended answer, Greenberg did not claim the benefit of this credit, and that Hollar made the same omission in his answer. There being no issue, by way of

counterclaim or otherwise, relating to this matter, there is no basis for allowance of the credit of $2,750.

[3] Appellant contends that the court erred in permitting the defendants Rosenberg, Greenberg, and Kleinberger to file separate amended answers at the time of the trial. These three defendants had filed a joint answer, verified by the affidavit of Kleinberger, wherein they admitted that they were parties to the agreement of sale by the plaintiff of the said excavator, and that plaintiff shipped the excavator to them. By way of cross-complaint incorporated in the same instrument with said answer, these same facts were affirmed by these defendants. Shortly before the time of trial of the action, application was made to the court by Rosenberg to file a separate answer, and by Kleinberger and Greenberg together to answer apart from the other defendants. That application was denied, but was renewed when the case was called for trial. It was stated to the court by counsel for the defendants, and not denied by the opposing counsel, that the former admission of fact had been made by inadvertence. The only objection then suggested on behalf of the plaintiff was that the plaintiff had not come into court prepared to prove facts which had been admitted in the pleadings on file. The court replied that if the plaintiff insisted upon this objection, a continuance would be granted at the cost of the defendants. The plaintiff declined a continuance, whereupon the judge stated that he would admit the evidence, and if the evidence would justify it, he would permit the answers to be amended accordingly. Thereupon the trial proceeded, and at the close thereof the court permitted the defendants to file the said separate amended answers.

Appellant now insists that the court abused its discretion in permitting defendants to file these amended answers, and thereby deny the existence of facts which in their previous verified pleadings they had admitted and affirmed. It is not claimed that by reason of these amendments the plaintiff suffered any disadvantage in the presentation of the evidence, or that the evidence is any different from what it would have been if the issues newly suggested thereby had been raised by the original answer. We think that there was no abuse of discretion in the allowance of these amended pleadings.

[4] We are not unmindful of the fact that it has been declared to be the rule that a party will not be permitted on the trial to amend by denying a fact admitted in the answer. (*Bank of Woodland* v. *Heron,* 122 Cal. 107, 110 [54 Pac. 537].) But this is not an absolute rule which must be applied without use of discretion. We only hold that in this case the discretionary power of the court has not been abused, even though it may be that the court would have been justified in making a contrary ruling.

[5] Finally, appellant contends that the court erred in refusing to grant a new trial upon the ground of newly discovered evidence. We have examined the affidavits presented to the court on the hearing of that motion. They relate to facts bearing upon the question of existence of a partnership between Hollar and some of the other defendants. Most of them relate to conditions existing subsequent to the date of the plaintiff's contract, and refer to facts which were known, or by the use of reasonable diligence might have been known, by the plaintiff at the time of the trial of this action. We think that the court was justified in denying the motion.

It is ordered that the judgment in favor of the defendants, other than the defendants X. H. Hollar, Hollar Rock Salt Company, and Pacific Rock Salt Company, be and the same hereby is affirmed. The judgment against the defendants X. H. Hollar, Hollar Rock Salt Company, and Pacific Rock Salt Company (the latter two being fictitious names used by X. H. Hollar in the transaction of business), is reversed with the instruction that the superior court enter judgment against the said X. H. Hollar, Hollar Rock Salt Company, and Pacific Rock Salt Company in the sum of $11,500, with interest computed as in the original judgment, together with costs.

Shaw, J., and James, J., concurred.