[Civ. No. 25119.   First Dist., Div. Two.   May 13, 1969.]

HENRY SAMUELSON, Plaintiff and Appellant, v.
L. INGRAHAM, Defendant and Respondent.

Haig T. Toomajian and John Paul Jones for Plaintiff and
Appellant.

Robert J. Duggan and James B. Smith for Defendant and
Respondent.

AGEE, J.—Plaintiff appeals from a judgment quieting
title in defendant to two parcels of real property. The issue
on appeal is whether the trial court erred in refusing to im-

pose a constructive trust upon said property in favor of appellant.

*Facts*: Prior to December 1952 appellant was the owner of a parcel in Richmond improved with a house (hereafter ''San Luis Avenue property'') and of an unimproved parcel in Pleasant Hill (hereafter ''Bonnie Lane property'').

On December 1, 1952 appellant executed and delivered a quit-claim deed of the San Luis Avenue property to one Stevens. On December 13, 1952 appellant executed and delivered a quit-claim deed of the Bonnie Lane property to said Stevens. Both deeds were recorded in December. Both conveyances were without consideration and were made for the sole purpose of defrauding appellant's creditors. This is expressly admitted by appellant.

On April 10, 1953 one Mercer, an assignee of two of said creditors who had reduced their claims to judgment, filed suit to have the conveyances to Stevens set aside as being in fraud of creditors. During the pendency of this action respondent purchased these two judgments, which were in the respective principal amounts of $742.35 and $1,500.

On March 10, 1954 judgment in favor of plaintiff[1] [respondent] was rendered in said action, declaring said conveyances to be ''null and void as to plaintiff'' and authorizing plaintiff ''to levy execution against said hereinafter described real property [i.e., the two parcels] in satisfaction of [the two] judgments against HENRY SAMUELSON [appellant].''

Respondent did not avail herself of the right to execute given to her under the judgment but instead, on August 30, 1954, accepted from Stevens and his wife deeds to the two respective parcels. These deeds were recorded on September 1, 1954. Respondent then proceeded to manage the properties, repair the house, which was badly run down, and pay the taxes, current and delinquent, on the two parcels. This involved the outlay of a substantial sum of money.

The instant action was commenced on May 29, 1964, *ten years* later. Although the trial court in its ''Memorandum of Decision'' states that ''We also think that the defense upon Section 318 of the Code of Civil Procedure[2] is good,'' re-

---

[1]Respondent availed herself of Code of Civil Procedure section 385, which provides in pertinent part that an action such as this does not abate by the transfer of any interest therein and that in case of such transfer the action may continue in the name of the original party.

[2]Section 318 provides: ''No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was

spondent appears to be content to have the appeal decided upon the sole issue of "unclean hands"[3] and does not urge or argue the applicability of section 318. In other words, respondent accepts the proposition that she stands in the shoes of her grantor, Stevens.

Appellant likewise takes the same position, stating in his opening brief that "The sole issue is whether plaintiff is barred in equity from imposing a trust upon the properties in question because . . . plaintiff made a transfer to Stevens in defraud of creditors, under the circumstances of this case."

In its memorandum of decision, the trial court poses the question as to whether the law will aid a grantor in recovering his property from the transferee of his grantee, when the initial conveyance was made with intent to defraud creditors. It concluded: "If unable to recover the property from the grantee there would seem to be no logical reason why the plaintiff should do so against a transferee of the grantee. It is the view of the Court that this plaintiff is not entitled to invoke the aid of Court to recover property which he has conveyed for the purpose of defrauding creditors."

It is an undisputed equitable principle that those who seek the aid of equity must sue in good faith (*Boericke v. Weise* (1945) 68 Cal.App.2d 407 [156 P.2d 781]). Any unconscionable conduct which relates to the transaction may give rise to the defense of unclean hands and bar relief. (4 Witkin, Summary of Cal. Law (1960) p. 2791; see also *Boericke v. Weise, supra,* at p. 419.) The question herein is whether the wrongful conduct of appellant in conveying the properties under an oral trust for the sole purpose of defeating the claims of creditors bars him from maintaining a suit against the later taker from his grantee. It would seem that the clean hands doctrine should apply in this instance, so appellant cannot now be heard to complain of his act, and cannot now come into equity to cancel the conveyance. (*Tognazzi v. Wilhelm* (1936) 6 Cal.2d 123 [56 P.2d 1227]; see also *Saint v. Saint* (1932) 120 Cal.App. 15 [7 P.2d 374].)

The case of *Moore v. Schneider* (1925) 196 Cal. 380, at page 385 [238 P. 81], specifically applies the equity defense of "clean hands" to the grantor who makes a conveyance in defraud of creditors by stating, "The grantor in a deed made

seised or possessed of the property in question, within five years before the commencement of the action."

[3]This issue is referred to in the pretrial order as "cross-defendant's [appellant's] clean hands."

for the purpose of defrauding, hindering, or delaying his creditors cannot be relieved against its operation. As to him, it is valid. [Citation.] Such a conveyance vests the legal title in the grantee. It is good against the grantor, his heirs, executors, administrators, and persons claiming under him, and as to all persons except creditors of the *grantor who may question it in a proper proceeding.''*

The trial court found on sufficient evidence that the ''purpose of the deed from SAMUELSON [plaintiff] to STEVENS was to defraud existing creditors of plaintiff.''

Appellant claims that an enforceable trust relationship existed between him and Stevens, and if no creditor asserted a claim, or, having asserted it did not prosecute it, he could have gone after his property. However, this is not the law in California. Under the doctrine set out in *Belling* v. *Croter* (1943) 57 Cal.App.2d 296, at page 306 [134 P.2d 532], ''Equity in administering its remedies, regards not alone the accomplished fact, but also the intent and purpose of the act. Of course, the purpose of concealment may be best demonstrated by proof that it resulted in fraud, but the 'unclean hands' principle is equally applicable to cases of intent to defraud as to those in which the intent ripened into accomplishment.''

Appellant next contends that he and respondent were parties to a confidential relationship, that respondent took advantage of this relationship in the conveyance to defeat the claims of creditors, and that therefore a constructive trust should be imposed. However, the evidence discloses that appellant made the illegal transfer initially to Stevens, who then approached respondent and transferred the property to her. Even though appellant and respondent had been engaged in prior business dealings, the confidential relationship, if there was one, was not a factor in this initial transfer. And, a conveyance to defraud creditors is fully perfected upon the transfer of the property. (*Tognazzi* v. *Wilhelm, supra*, 6 Cal. 2d at p. 125.)

Secondly, a confidential relationship, in order to defeat the conveyance made with intent to defraud creditors, must be such as to put the parties *in pari delicto*. If the facts show that the plaintiff is in *delicto*, but not *pari delicto*, his guilt will not prevent him from obtaining equitable relief.

The court stated this doctrine in *Chamberlain* v. *Chamberlain* (1908) 7 Cal.App. 634, at page 639 [95 P. 659] : ''A cannot lay a trap for B, secure his confidence, induce him to make a

conveyance of his property in the expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that B too readily yielded to temptation to save himself at the possible expense of creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken.'' (See also *Belling* v. *Croter, supra,* 57 Cal.App.2d 296, 305.)

In other words, proof that a transfer of property in order to conceal it from creditors of the transferor does not necessarily bar a recovery of such property from the transferee or his assigns.

Respondent recognizes this, stating in her brief, the following: ''The Mercer judgment serves respondent only as evidence of the fact that the conveyance by appellant to Stevens was for the purpose of defrauding creditors. Respondent does not rely on it as a bar.'' However, there is no evidence to the effect that any acts of respondent *or of her grantor, Stevens,* induced the fraudulent conveyance. Certainly, respondent did not conceive of the scheme or suggest it to appellant. Her only acts in regard to the transaction were to purchase the properties from Stevens, appellant's fraudulent trustee.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied June 12, 1969, and appellant's petition for a hearing by the Supreme Court was denied July 9, 1969.